Cynthia KARTMAN, John Kartman, Brett A. Compton, Gina K. Compton, Thomas Helm, Beth Helm, Brian Stergar, Karen Stergar, Marie A. Elmore, Jay C. Jackson, Lois Hardin, Terry Harger, Ernest R. Rodabaugh, April S. Rodabaugh, Gretchen Wiegand, Marilyn Pazos, Bradley Robinson, Randolph Smith, Noel Hawkins, Hong Gao, Bin Tong, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Fire and Casualty Company, State Farm General Insurance Company, Defendants.

Mark W.P. Pollock, et al., Plaintiffs,

v.

State Farm Mutual Automobile Insurance Company, et al., Defendants.

No. 1:07–cv–0474–JDT–TAB.

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 21, 2007.

562

Christopher Allan Moeller, Jamie Ranah Kendall, Jana K. Strain, Joseph N. Williams, William N. Riley, Price Waicukauski & Riley, Indianapolis, IN, for Plaintiffs.

Dennis F. Cantrell, Tara J. Stapleton, Bingham McHale, LLP, Indianapolis, IN, Joseph E. Ezzie, Mark A. Johnson, Baker & Hostetler LLP, Columbus, OH, for Defendants.

## ORDER ON DEFENDANT'S MOTION TO COMPEL

TIM A. BAKER, United States Magistrate Judge.

### I. Introduction.

Prior to filing this lawsuit, Plaintiffs' counsel undertook a comprehensive factual investigation relevant to the claims being asserted. Plaintiffs' investigation garnered numerous documents from publicly available sources, including from Defendant State Farm's own web sites. After Plaintiffs filed suit, State Farm served interrogatories on Plaintiffs requesting the documents obtained by Plaintiffs' counsel's investigation. Although Plaintiffs plan to use these documents "for the purpose of cross-examining and impeaching State Farm representatives," Plaintiffs objected to producing the documents in discovery on the basis of the work product doctrine. [Docket No. 44 at 2–3.] This discovery dispute prompted State Farm to file a motion to compel. [Docket No. 42.] A secondary issue raised by the motion is the timing of Plaintiffs' response to State Farm's contention interrogatories. As set forth more fully below, the Court grants State Farm's motion to compel.

### II. Discussion.

#### A. Documents obtained by Plaintiffs' counsel.

"The work product doctrine protects from disclosure documents and tangible things otherwise discoverable that were prepared in anticipation of litigation." *Chalimoniuk v. Interstate Brands Corp.*, No. IP01–0788–C–T/K, 2002 WL 1048826 (S.D.Ind.2002); *see also Hickman v. Taylor,*

329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir.1996) (explaining that to claim protection of the doctrine, a party must demonstrate that the materials in question would otherwise be discoverable and were prepared in anticipation of litigation); *Caremark, Inc., v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D.Ill.2000) ("The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial."). The burden is on the party asserting the doctrine to establish these elements. *Bartlett v. State Farm Mut. Auto. Ins. Co.*, 206 F.R.D. 623, 628 (S.D.Ind.2002).

■ Plaintiffs assert that disclosing the disputed documents "would necessarily reveal counsel's mental impressions and litigation strategy." [Docket No. 44 at 3.] In contrast, State Farm contends that "Plaintiffs intend to withhold clearly responsive documents from State Farm based upon a temporary invocation of work product protection that Plaintiffs will waive at tactically opportune times." [Docket No. 43 at 4].

The case at hand is similar to *Bartley v. Isuzu Motors Ltd.*, 158 F.R.D. 165, 167 (D.Colo.1994), in which the defendant in a products liability design defects case sought to compel the plaintiff to produce various documents obtained from a "litigation clearinghouse" operated by the American Trial Lawyers Association. In granting the motion to compel in part, the court stated:

> There appears to be no dispute that Plaintiff's counsel has secured various documents that were generated in other cases involving these Defendants. The issues in other cases may well be the same as those detailed in the complaint in this case. Defendants want to know what documents have been secured by Plaintiff and his counsel, and to have an opportunity to review them. Plaintiff has provided no privilege log or other list that would even indicate what documents are possessed

that have not been made available for inspection.

> In order for documents to qualify as exempt from discovery under the work product doctrine, the material must be documents or other tangible things, must be prepared in anticipation of litigation, and must be prepared by or for a party or his counsel. *Fed. R. Civ. P.* 26(b)(3). In this case, there are documents or other tangible items. The documents were secured from other sources, such as ATLA, and were not prepared in anticipation of this particular litigation. The documents were not prepared by or for Plaintiff or his counsel in this litigation.

> This Court agrees with Defendants that documents obtained from a litigation group, such as ATLA, are not subject to the work product doctrine.

*Id.* at 167–68; *see also Miller v. Ford Motor Co.*, 184 F.R.D. 581, 583 (S.D.W.Va.1999) (granting motion to compel and finding work product privilege did not apply to documents plaintiff's counsel obtained from trial lawyers' association concerning alleged vehicle defect because the documents were not prepared by or for the plaintiff or her representative in anticipation of this litigation).

As in *Bartley,* the Plaintiffs in the case at bar have secured various documents from various sources that were not prepared in anticipation of this particular litigation. Like the defendant in *Bartley,* State Farm wants to know what documents Plaintiffs have secured, and seeks an opportunity to review these documents. Finally, both the *Bartley* plaintiffs and the Plaintiffs at bar have provided no privilege log or other list that would indicate what documents they possess that have not been made available for inspection. These similarities, as well as *Bartley's* reasoned outcome, support a similar result here.[1]

Other factually similar cases have reached the same result. For example, in *EEOC v. Jewel Food Stores,* 231 F.R.D. 343, 347

---

1. *Bartley* is not precisely the same as the case at bar in that there is no indication that Plaintiffs' counsel obtained the disputed documents at issue here from a "litigation clearinghouse." Rather, Plaintiffs' counsel obtained these documents by culling various publicly available sources. [Docket No. 44 at 2–3]. This distinction, while notable, is not particularly significant to the outcome.

(N.D.Ill.2005), the court rejected the argument that the work product doctrine shielded from discovery the identities of persons the defendant's counsel interviewed while investigating harassment allegations. In rejecting this argument, the court noted there is a "substantial body of case law" holding that the work product doctrine does not protect from production documents that attorneys obtain from third parties during their investigation in connection with a lawsuit. *Id.* The *Jewel* court then stated, "The reasoning of these cases is that the mere assembly of documents, without more, does not indicate that the attorney placed special weight on those documents as opposed to documents that were not obtained, and does not reveal which of the assembled documents the attorney deems important." *Id.*

Another factually similar case reaching the same result is *In re Grand Jury Subpoenas,* No. M 11–189, 2002 WL 31040322, 2002 U.S. Dist. Lexis 17079 (S.D.N.Y.2002). In that case, the government sought to compel compliance with two grand jury subpoenas issued to a law firm defending a corporation and its principal being investigated by the grand jury. The subpoenas sought Swiss bank records that the law firm had compiled as part of its representation of these clients. Asserting a work product privilege, the law firm claimed that disclosure would necessarily reveal elements of its legal strategy. Rejecting this argument, the court stated that the records "are the pre-existing records of third parties, created and maintained in the ordinary course of business by those third parties without any reference to litigation whatsoever." *Id.* at *4, 2002 U.S. Dist. Lexis 17079 at *12. The court concluded that were it to agree that the documents need not be produced then "virtually any material collected by an attorney would merit protection under this low standard." *Id.* at *5, 2002 U.S. Dist. Lexis 17079 at *13.

The same result is appropriate here. The disputed documents were not prepared in anticipation of litigation. On the contrary, they were prepared by State Farm with absolutely no thought whatsoever of this particular litigation. Thus, the work product analysis falters at the very outset. While the documents were not prepared in anticipation of litigation, they were assembled or collect-

ed in anticipation of litigation. However, a blanket application of the work product doctrine in this instance is strained at best. As State Farm correctly observes, "Merely gathering documents from third parties does not gloss the documents with an attorney's mental impressions any more that simply sharing documents with an attorney stamps the documents with the imprimatur of attorney-client privilege." [Docket No. 43 at 8.]

This is not to say that the work product doctrine has no potential application whatsoever in this setting. On the contrary, there is some support for Plaintiffs' contention that under certain circumstances providing the documents assembled by counsel could provide a window into counsel's mental process. For example, in *Sporck v. Peil,* 759 F.2d 312, 313 (3d Cir.1985), the defendants produced hundreds of thousands of documents to plaintiff during discovery, from which plaintiff's counsel selected more than 100,000 for copying. Then in preparation for defendant's deposition, defense counsel selected and compiled a small subset of these documents in a folder, which counsel used to prepare the defendant for deposition. At the outset of the deposition, plaintiff's counsel asked the defendant to identify all documents reviewed in preparation for the deposition. Defense counsel objected on the ground that the selected documents represented, as a group, counsel's legal opinion as to the evidence relevant both to the allegations and possible defenses. *Id.* at 313.

Plaintiff filed a motion to compel, which the district court granted. On appeal by way of mandamus, the Third Circuit reversed, stating, "Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, petitioner argues that identification of the documents as a group must be prevented to protect defense counsel's work product. We agree." *Id.* at 315. "We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Id.* at 316; *see also James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144 (D.Del.1982) ("In selecting and ordering a

few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case.")

However, these cases are distinguishable. Unlike in *James Julian* and *Sporck*, State Farm is not seeking a subset of documents assembled by opposing counsel. Nor is State Farm seeking a folder of documents that Plaintiffs have used to prepare the Plaintiffs or witnesses for depositions. Nor does State Farm otherwise seek to determine how the Plaintiffs have compiled, selected, or organized key documents. Instead, State Farm seeks the entire universe of documents Plaintiffs obtained by way of a pre-suit, "comprehensive factual investigation" involving "publicly available sources." [Docket No. 44 at 2.] Thus, this Court recognizes that, under certain circumstances, producing documents assembled by counsel could provide a window into counsel's mental process. However, for the reasons set forth above, *James Julian* and *Sporck* are distinguishable.

Plaintiffs nevertheless insist that turning these documents over would necessarily reveal counsel's mental impressions and litigation strategy. Specifically, Plaintiffs argue:

> If State Farm's position is to be agreed with, then the development of a client's case will be crippled. According to State Farm, counsel should take care not to print a single document culled from the public realm (e.g., the internet), or else be forced to produce that document to opposing counsel. Apparently, every time Plaintiffs' Counsel reads an article criticizing State Farm's adjusting 'procedures,' he should make sure to print two copies, one for his file and one for opposing counsel's file.

[Docket No. 44 at 8.]

This argument misses the mark. State Farm is not asking Plaintiffs' counsel to produce every article counsel has read that may relate to this case, nor does the discovery request seek other general background research counsel may have conducted in investigating the merits of Plaintiffs' claims. Rather, State Farm's request focuses on evidence Plaintiffs admit is relevant to the issues in this case that Plaintiffs plan to utilize at depositions and at trial. If Plaintiffs did not intend to use these documents in this fashion, Plaintiffs' argument would be consid-

erably stronger. However, given Plaintiffs' intended use of these documents, the Court agrees with State Farm's characterization that Plaintiffs are withholding "clearly responsive documents ... based upon a temporary invocation of work product protection that Plaintiffs will waive at tactically opportune times." [Docket No. 43 at 4].

■ As noted above, the party asserting the work product doctrine must establish all of its elements on a document-by-document basis. *Bartlett*, 206 F.R.D. at 628. Given that the documents were not prepared in anticipation of litigation, Plaintiffs cannot satisfy their burden in this case. Plaintiffs' failure to provide a privilege log also undermines the application of the work product doctrine. Finally, Plaintiffs' admitted intention of using the documents to cross-examine and possibly impeach State Farm's witnesses further supports finding the work product doctrine inapplicable.

The only other authority for Plaintiffs' position is found in *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 233 F.R.D. 209 (D.D.C.2006), a case upon which the Plaintiffs rely heavily. [Docket No. 44 at 3–5.] In that case, the court declined to order production of documents gathered by the defendants' counsel. However, the court specifically noted that the plaintiffs (who were seeking discovery) did not argue that the documents were not work product. *Id.* at 213. Thus, the work product issue was not squarely presented to the court. In addition, there was no indication in *Ringling Brothers* that the disputed documents were the requesting party's own documents, or that the documents were going to be used as substantive evidence. In contrast, the documents at issue in the case at bar are largely if not completely State Farm's own documents, which Plaintiffs candidly admit they plan to use at depositions and at trial. Thus, *Ringling Brothers* is distinguishable and does not control the outcome of the instant discovery dispute.

The case law and analysis set forth above supports the conclusion that, under the circumstances at issue here, State Farm is entitled to the disputed documents. According-

ly, State Farm's motion to compel is granted with respect to the foregoing documents that Plaintiffs have withheld from production.

## B. State Farm's contention interrogatories.

■ As noted at the outset, a secondary matter raised by State Farm's motion to compel involves Plaintiffs' lack of a response to State Farm's contention interrogatories. Plaintiffs resist responding to State Farm's contention interrogatories based upon language in Fed.R.Civ.P. 33 and *H & R Block Mortgage Corp., Prescreening Litig.,* 2006 WL 3692431 (N.D.Ind. Dec.13, 2006). Rule 33(c) provides in relevant part, "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." [2] As the language of the rule makes clear, there is nothing improper about contention interrogatories. Indeed, they are used "routinely." Fed. R.Civ.P. 33 advisory committee notes (2007).

■ Thus, the issue is not whether Plaintiffs must respond to State Farm's contention interrogatories, but when they must do so. The language of the rule is again instructive. Rule 33(a)(2) provides in relevant part that the court "may" order that the interrogatory need not be answered until some later date. Thus, the Court has discretion to delay a response to a contention interrogatory. To put it another way, contention interrogatories must be responded to within the usual 30–day period unless a court, in its discretion, finds that the response time should be delayed.

Plaintiffs place great emphasis on *H & R Block,* 2006 WL 3692431 (N.D.Ind. Dec.13, 2006). In *H & R Block,* Magistrate Judge Cherry stated that Rule 33 authorizes courts to defer requiring an answer to contention interrogatories. *Id.* at *4. While this is a correct statement of the law, *H & R Block* is not instructive as to whether it is appropriate in the case at bar to permit Plaintiffs to defer a response to State Farm's contention interrogatories. In fact, in *H & R Block* the court granted the defendant's motion to compel and ordered the plaintiff to respond to the defendant's contention interrogatories.

Plaintiffs offer little justification for delaying the response deadline. Plaintiffs merely state that contention interrogatories at this stage in the litigation are "improper" because they "force Plaintiffs to articulate theories of their case that are not yet fully developed." [Docket No. 44 at 10.] But Plaintiffs should be able to articulate their general legal theories in this high-stakes, class action litigation even if these theories are not fully developed. This is particularly true given Plaintiffs' counsel's admitted extensive pre-litigation investigation. Or as State Farm puts it, "other than stating that contention discovery *can* be delayed, Plaintiffs have not articulated a legitimate basis for why it *should* be delayed here." [Docket No. 46 at 9.] In addition, Plaintiffs do not specifically indicate how much additional time might be needed to respond to State Farm's contention interrogatories. Rather, Plaintiffs vaguely ask that the date be "delayed until substantial discovery has taken place." [Docket No. 44 at 11.]

As State Farm points out, the approaching February 15, 2008, deadline for Plaintiffs' motion for class certification suggests that additional delay should be avoided. Delaying Plaintiffs' discovery responses could jeopardize the class certification briefing schedule. There has been no bifurcation of class certification and merits discovery. If Plaintiffs later determine that their responses to the contention interrogatories are insufficient in some fashion, they may supplement their responses as contemplated by Fed.R.Civ.P. 26(e). For these reasons, State Farm's motion to compel is granted with respect to the disputed contention interrogatories.

## III. Conclusion.

For the reasons set forth above, the work product doctrine does not protect the disput-

---

2. The parties cite to the former version of Rule 33, which was amended effective December 1, 2007. The former version of the rule provided in relevant part, "An interrogatory is not *necessarily* objectionable merely because ...." (emphasis added). Thus, the amended rule deletes the word "necessarily," which implied that the an interrogatory might be objectionable merely for this reason. Fed.R.Civ.P. 33 advisory committee notes (2007).

ed documents from disclosure in this instance. In addition, Plaintiffs must respond to State Farm's contention interrogatories. Accordingly, the Court grants State Farm's motion to compel. [Docket No. 42.] Plaintiffs shall produce the disputed documents, and respond to State Farm's contention interrogatories, within 20 days from the date of this order.

